ALYSSA A. QUALLS (IL Bar No. 6292124)
*PRO HAC VICE* APPLICATION PENDING
Email:  quallsa@sec.gov
ROBERT M. MOYE (IL Bar No. 6225688)
*PRO HAC VICE* APPLICATION PENDING
Email:  moyer@sec.gov
MICHAEL MUELLER (IL Bar No. 6297254)
*PRO HAC VICE* APPLICATION PENDING
Email:  muellerm@sec.gov
175 West Jackson Blvd., Suite 1450
United States Securities and Exchange Commission
Chicago, Illinois 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

Attorneys for Plaintiff
United States Securities and Exchange Commission

LOCAL COUNSEL
Donald W. Searles (Cal. Bar No. 135705)
Email:  searlesd@sec.gov
United States Securities and Exchange Commission
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>WELLNESS MATRIX GROUP, INC. and GEORGE TODT,<br><br>Defendants, | Case No.<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1.      The SEC brings this action pursuant to authority conferred on it by

Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act"),

15 U.S.C. §§ 78u(d) and 78u(e), to restrain and enjoin the Defendants Wellness

Matrix Group, Inc. ("Wellness Matrix") and George Todt from engaging in the acts, practices, and courses of business described in this Complaint and acts, practices, and courses of business of similar purport and object. The SEC seeks permanent injunctions and civil penalties pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3). In addition, the SEC seeks a conduct-based injunction pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), an officer and director bar pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2), and a penny stock bar pursuant to Section 21(d)(6)(A) of the Exchange Act, 15 U.S.C. § 78u(d)(6)(A), against Todt based on his violations of the securities laws.

2.     The Court has jurisdiction over this action pursuant to Sections 21(d) and 21(e) of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e).

3.     Wellness Matrix and Todt have, directly and indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

4.     Venue is proper in this district pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.

**SUMMARY**

5.     In February and March 2020, Wellness Matrix, a Nevada microcap company, and George Todt, a Wellness Matrix business consultant who controlled much of Wellness Matrix's day-to-day activities, made materially false and misleading statements regarding COVID-19 at-home test kits and/or disinfectants that defrauded Wellness Matrix investors.

6.     Wellness Matrix and Todt marketed the at-home test kits and disinfectants to consumers on Wellness Matrix-affiliated websites when Wellness Matrix did not have the products to deliver to consumers.

7.     Furthermore, Wellness Matrix and Todt made materially false and misleading statements about the products themselves. For example, Wellness Matrix and Todt falsely represented that the at-home test kits were approved and registered for use by the United States Food and Drug Administration ("FDA") and the disinfectants were approved and registered by the United States Environmental Protection Agency ("EPA").

8.     At the time Wellness Matrix and Todt made these materially false and misleading statements, Wellness Matrix and Todt knew, or were reckless in not knowing, that they did not have the products to deliver to consumers and that the products were neither approved nor registered by the FDA or the EPA.

9.     By engaging in the transactions, acts, practices, and courses of business alleged herein, Wellness Matrix and Todt knowingly and recklessly violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

10.     As described in paragraph 1, the SEC seeks permanent injunctions and civil penalties against Wellness Matrix and Todt, and a conduct-based injunction, officer and director bar, and a penny stock bar against Todt, based on their violations of the securities laws.

## DEFENDANTS

11.     **Wellness Matrix Group, Inc. ("Wellness Matrix")** is a Nevada corporation, incorporated in 2009, with its principal executive offices located in Huntington Beach, California. Wellness Matrix claims to be a healthcare technologies start-up business. Wellness Matrix's common shares are quoted on OTC Link, an electronic inter-dealer quotation system for over-the-counter securities operated by OTC Markets Group Inc.

12.     **George Todt**, 67 years old, is a resident of Marina Del Rey, California and a Wellness Matrix business consultant. Todt owns 82.75 percent of the common shares of Wellness Matrix through a nominee entity, Chanzong Huayuan LLC

1   ("Chanzong"). Chanzong is a Nevada limited-liability company formed in 2015. Todt

2   is the manager of the entity.

3                                                    **FACTS**

4   **I.       Wellness Matrix's Business and Financial Condition**

5          13.     On June 1, 2018, a predecessor in interest to Wellness Matrix acquired

6   Wellness Matrix Company, the business purpose of which was "to develop and

7   implement the most advanced technologies available to provide advanced healthcare

8   and to provide advanced systems and platforms to allow customers to have access to

9   the most secure data storage and records security available."

10         14.     On June 20, 2018, the Board approved the name change to Wellness

11  Matrix Group, Inc. and filed an amendment to its articles of incorporation with the

12  state of Nevada.

13         15.     On April 10, 2020, Wellness Matrix filed an amended Form 10 (which

14  was later withdrawn) that included audited annual financial statements for Wellness

15  Matrix's year ending April 30, 2019 and unaudited financial statements for the nine

16  months ended January 31, 2020.

17         16.     Wellness Matrix's audited financial statements showed that Wellness

18  Matrix had assets of $54,998, liabilities of $309,365, and an equity deficit of

19  $254,367 as of April 30, 2019. The company had zero revenues for the year ending

20  April 30, 2019.

21         17.     Wellness Matrix's unaudited financial statements showed the company

22  had zero revenues for the nine months ended January 31, 2020 and had assets of $459

23  as of January 31, 2020.

24         18.     As of April 7, 2021, Wellness Matrix's market capitalization was

25  approximately $4.5 million.

26  **II.      Todt Controls Wellness Matrix.**

27         19.     During the relevant period, Wellness Matrix's CEO and Chairman of the

28  Board of Directors allowed Todt to run the day-to-day affairs of the company,

                                                      4

1   including naming the Wellness Matrix board members.

2      20.   Todt became involved with Wellness Matrix in 2018 when Wellness

3   Matrix's CEO agreed to sell the Wellness Matrix public company shell to Todt for

4   $300,000. The agreement provided that Wellness Matrix's CEO would transfer his

5   controlling Series A preferred shares to Todt after the purchase price had been paid in

6   full.

7      21.   During the relevant period, Wellness Matrix's CEO allowed Todt to

8   control WMGR.

9
10  **III.   Wellness Matrix's and Todt's Representations Regarding the COVID-19-Related Products.**

11     22.   In February and March of 2020, Wellness Matrix and Todt touted and

12  marketed COVID-19 test kits and disinfectant products on Wellness Matrix-affiliated

13  websites when they did not have the products to deliver to consumers.

14     23.   Furthermore, Wellness Matrix and Todt made materially false and/or

15  misleading statements about the products themselves. For example, Wellness Matrix

16  and Todt falsely represented that the at-home test kits were FDA approved and

17  registered and the disinfectants were EPA approved and registered.

18     24.   Todt acted personally and on behalf of Wellness Matrix when engaging

19  in this fraudulent conduct.

20     **A.   Wellness Matrix Is Unable to Procure COVID-19-Related Products.**

21     25.   Beginning in February 2020, Todt began communicating with some of

22  his associates regarding potential COVID-19-related products for Wellness Matrix to

23  market.

24     26.   In connection with these communications, Todt received information on

25  an antiviral disinfecting compound (the "Disinfectant") that claimed to be effective in

26  killing COVID-19 for 28 days, among other things.

27     27.   Around the same time, Todt registered the website coronastop28.com

28  and his ex-wife registered the websites stopcorona28.com and virastop28.com.

28.     On or about March 16, 2020, Todt learned of a COVID-19 test distributed by CoronaCide, LLC ("CoronaCide"). The label for the CoronaCide test kit that Todt received warned that the test kits were "For In Vitro Diagnostic Use Only" and "For Emergency Use Authorization Only."

29.     Soon after Todt learned of these CoronaCide tests kits, Wellness Matrix opened up a payment processing account at Todt's direction in order to allow Wellness Matrix to receive payments from consumers for COVID-19-related product sales.

30.     On March 19, 2020, an associate of CoronaCide (the "CoronaCide Associate") sent Todt correspondence from the FDA stating it had received the CoronaCide test kit submission. The letter also stated that the FDA would notify CoronaCide when its review was completed. The FDA's letter did not indicate that the FDA had approved the CoronaCide test kits for any use.

31.     On March 20, 2020, Todt sent a Wellness Matrix purchase order to CoronaCide for approximately $10,000 of CoronaCide test kits and Disinfectant. Minutes later, the CoronaCide Associate notified Todt that the CoronaCide test kits were only to be sold to governments in bulk at that time, and therefore Wellness Matrix's CoronaCide test kit order would not be filled. The CoronaCide Associate emailed Todt a couple days later and informed Todt that Wellness Matrix's Disinfectant order would also not be filled.

**B.     Wellness Matrix and Todt Market and Sell COVID-19-Related Products.**

32.     Around this time, Todt contacted one of his associates and, on behalf of WGMR, directed him to add information about the CoronaCide test kits and Disinfectant to the websites stopcorona28.com and virastop28.com. Todt specifically told the associate to include the FDA submission number for the CoronaCide test kits and to indicate that the COVID-19 products were Wellness Matrix products.

33.     Around the same time, Todt retained other associates to assist in selling

6

1   Wellness Matrix's COVID-19-related products to consumers.

2          34.     At Todt's direction, the Wellness Matrix website included a banner on

3   the front page that directed viewers to "Visit CoronaStop28.com" and provided a

4   link.

5          35.     From at least March 19, 2020 until approximately March 31, 2020,

6   Wellness Matrix offered through the Wellness Matrix-affiliated websites

7   coronastop28.com, stopcorona28.com, and virastop28.com, and through social media,

8   the CoronaCide test kits and the Disinfectant for sale.

9          36.     The Wellness Matrix-affiliated websites included clear references tying

10  the products to Wellness Matrix. For example, virastop28.com provided a disclaimer

11  which stated that the products were being sold by Wellness Matrix. Further, the

12  pictures of the Disinfectant on all of the Wellness-affiliated websites stated that they

13  were a "WMGR Product."

14         37.     However, from before March 19, 2020 until approximately March 31,

15  2020, neither Wellness Matrix nor Todt were in possession of or had the ability to

16  procure the CoronaCide test kits or Disinfectant.

17         38.     The CoronaCide test kits were advertised on the Wellness Matrix-

18  affiliated websites for at least three days, during the time period from March 19, 2020

19  until approximately March 31, 2020, as being FDA-approved and for at least two

20  other days as being "FDA registered and authorized."

21         39.     In addition, the Wellness Matrix-affiliated websites advertised the

22  CoronaCide test kits as an at-home test kit for COVID-19, providing results within

23  ten minutes "in the privacy of your own home."

24         40.     The Wellness Matrix-affiliated websites advertised the Disinfectant as

25  EPA approved or registered, citing a purported EPA registration number "Reg #HQ-

26  OPP-2013-0220-0008."

27         41.     Todt also touted the Wellness Matrix CoronaCide test kits on social

28  media. For example, on March 19, 2020, on his personal Twitter account, Todt

1  falsely claimed Wellness Matrix was selling "Fda approved" "[h]ome test kits" to

2  "Stop Corona Before It Starts":



10      42.     Todt also utilized social media to publicize the Wellness Matrix

11  affiliated websites, tweeting the names of the sites to numerous twitter handles.

12  **IV.    Wellness Matrix and Todt Knew, or Were Reckless in Not Knowing, that
          Their Statements on Wellness Matrix-Affiliated Websites and Social**
13        **Media Were Materially False and Misleading.**

14      43.     As described above in paragraphs 22-42, Wellness Matrix and Todt

15  made the statements about the CoronaCide test kits and Disinfectant on Wellness

16  Matrix-affiliated websites and social media.

17      **A.     The CoronaCide Test Kits**

18      44.     First, Wellness Matrix's and Todt's statements on the Wellness Matrix-

19  affiliated websites, and Todt's statements on social media, claiming that they had

20  CoronaCide test kits available for purchase and delivery was materially false and

21  misleading. From before March 19, 2020 until approximately March 31, 2020,

22  Wellness Matrix and Todt knew, or were reckless in not knowing, that neither

23  Wellness Matrix nor Todt had any CoronaCide test kits to deliver to consumers.

24      45.     Second, Wellness Matrix's and Todt's statements on the Wellness

25  Matrix-affiliated websites, and Todt's statements on social media, claiming that the

26  CoronaCide test kits were either FDA approved or registered and authorized for at-

27  home use were materially false and misleading. From before March 19, 2020 until

28  approximately March 31, 2020, Wellness Matrix and Todt knew, or were reckless in

1  not knowing, that the FDA had neither approved, registered, nor authorized the use of

2  the CoronaCide test kits. Among other things, on March 19, 2020, Todt had received

3  an FDA letter from a CoronaCide associate indicating that the CoronaCide test kits

4  were under review by the FDA and were not approved for use. In addition, on March

5  23, 2020, Todt was told by one of his salesman pitching the CoronaCide test kits that,

6  according to customers, the FDA number for the test kits was not identified on the

7  FDA's website.

8  **B.      The Disinfectant**

9      46.      First, Wellness Matrix's and Todt's statements on the Wellness Matrix-

10  affiliated websites claiming that they had Disinfectant available for purchase and

11  delivery were materially false and misleading. From before March 19, 2020 until

12  approximately March 31, 2020, Wellness Matrix and Todt knew, or were reckless in

13  not knowing, that neither Wellness Matrix nor Todt had any Disinfectant to deliver to

14  consumers.

15      47.      Second, Wellness Matrix's and Todt's statements on the Wellness

16  Matrix-affiliated websites claiming that the Disinfectant was EPA approved or

17  registered were materially false and misleading. From before March 19, 2020 until

18  approximately March 31, 2020, Wellness Matrix and Todt knew, or were reckless in

19  not knowing, that Reg #HQ-OPP-2013-0220-0008 was not a valid EPA registration

20  number, and the Disinfectant was not an EPA-registered pesticide and did not meet

21  the EPA's criteria for use against the virus that causes COVID-19.

22      48.      Specifically, the EPA maintains the database "List N: Disinfectants for

23  Use Against SARS-CoV-2," which lists products that meet EPA's criteria for use

24  against SARS-CoV-2, the virus that causes COVID-19. Todt knew, or was reckless in

25  not knowing, that the Disinfectant was not included on List N. Todt also received an

26  email from one of his product sales representatives that called into question the EPA

27  registration number for the Disinfectant.

28

**V.     Todt Makes Material Misrepresentations to a Wellness Matrix Investor.**

49.     On February 27, 2020, an individual (the "Investor") visited Todt. Todt told the Investor to invest in Wellness Matrix because it had a Disinfectant to stop the spread of COVID-19 that had been approved by the EPA.

50.     Todt also told the Investor that the United States government and Amazon had expressed interest in the Disinfectant, and that he believed Wellness Matrix's stock price could increase from $0.05 per share to $20 per share as a result of the new product.

51.     Todt also told the Investor that he was one of the owners of Wellness Matrix, and showed him the coronastop28.com website on his computer, which he said was affiliated with Wellness Matrix and created by him a few days ago.

52.     A day later, the Investor followed up with Todt, and Todt told the Investor that Wellness Matrix had sold 10,000 units of Disinfectant to Costco.

53.     The Investor periodically reviewed the coronastop28.com website and noticed that the CoronaCide test kits and Disinfectant supporting documentation were added to the site. The Investor also noticed that Wellness Matrix's website included a link to the coronastop28.com website.

54.     Todt's statements to the Investor were materially false and misleading. Todt knew, or was reckless in not knowing, that: (a) Wellness Matrix and Todt did not have any Disinfectant to deliver to consumers; (b) the Disinfectant had not been approved by the EPA; and (c) Wellness Matrix had not made any sales of Disinfectant to Costco.

55.     In addition, as explained above in paragraphs 43-48, Todt knew, or was reckless in not knowing, that the claims regarding Wellness Matrix's products on coronastop28.com were materially false and misleading.

56.     From March 6, 2020 to March 24, 2020, the Investor purchased over 23,000 shares of Wellness Matrix. The information that the Investor learned from Todt and the Wellness Matrix-affiliated websites about Wellness Matrix's marketing

1  of COVID-19-related products was important to his decision to buy the Wellness

2  Matrix stock.

3    57.    The Investor also told his sister about what he had learned about

4  Wellness Matrix, and she purchased 5,000 shares of Wellness Matrix stock on March

5  26, 2020.

6    58.    The Investor has since sold his shares of Wellness Matrix and realized a

7  loss of approximately $900. The Investor's sister has since sold her Wellness Matrix

8  shares and realized a loss of approximately $400.

9
10  **VI.    Wellness Matrix's and Todt's Materially False and Misleading Statements Impacted Trading of Wellness Matrix Stock.**

11    59.    In the three months prior to February 25, 2020, Wellness Matrix's share

12  price fluctuated between $0.025 and $0.053, with an average daily trading volume of

13  28,100 shares for the three-month period.

14    60.    On February 24, 2020, Wellness Matrix filed a Form 10 with the SEC

15  that included audited financial statements that showed no revenue for the company

16  for its prior fiscal year.

17    61.    On the following day, February 25, 2020, Wellness Matrix's share price

18  fluctuated between $0.05 and $0.10 with a trading volume of 194,055 shares.

19    62.    After February 25, 2020 through April 6, 2020, Wellness Matrix's share

20  price fluctuated between $0.035 and $0.19, with an average trading volume of

21  approximately 85,000 shares.

22    63.    As discussed above, Wellness Matrix and Todt offered the CoronaCide

23  test kits and Disinfectant for sale on Wellness Matrix-affiliated websites from at least

24  March 19, 2020 until approximately March 31, 2020.

25    64.    On March 25, 2020, the mid-point of this sale period, Wellness Matrix's

26  share price opened at $0.19 from the previous day's closing price of $0.09.

27    65.    At this point in time, national and local news reports were dominated by

28  reports of COVID-19 case increases and the lack of a self-administered test for the

11

1  virus.

2      66.    Investors purchased Wellness Matrix stock as a result of Wellness

3  Matrix's and Todt's materially false and misleading statements about the CoronaCide

4  test kits and Disinfectant and these representations were important to investors in

5  deciding to buy WMGR stock.

6  **VII.   Wellness Matrix's Fraud is Revealed.**

7      67.    On April 2, 2020, National Public Radio, which had conducted an

8  investigation into the sales of Wellness Matrix's CoronaCide test kits, reported that:

9  (a) several customers who ordered the Wellness Matrix CoronaCide test kits said they

10 never received them and have tried to cancel their payments; and (b) the FDA had not

11 authorized any at-home COVID-19 test kit.

12     68.    On April 7, 2020, the SEC suspended trading in Wellness Matrix's

13 securities because of questions regarding the accuracy and adequacy of information

14 in the marketplace since at least March 19, 2020.

15                                  **I.**

16                          **<u>CLAIM FOR RELIEF</u>**

17       **Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

18     69.    The SEC realleges and incorporates by reference paragraphs 1 through

19 68 above.

20     70.    By engaging in the conduct described above, Wellness Matrix and Todt

21 directly or indirectly, in connection with the purchase or sale of a security, by the use

22 of means or instrumentalities of interstate commerce, of the mails, or of the facilities

23 of a national securities exchange: (a) employed devices, schemes, or artifices to

24 defraud; (b) made untrue statements of a material fact or omitted to state a material

25 fact necessary in order to make the statements made, in the light of the circumstances

26 under which they were made, not misleading; and (c) engaged in acts, practices, or

27 courses of business which operated or would operate as a fraud or deceit upon other

28 persons.

71.     In engaging in the conduct described herein, Defendants Wellness Matrix and Todt acted knowingly and with a reckless disregard for the truth.

72.     By reason of the foregoing, Wellness Matrix and Todt, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

### II.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendants, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and permanently enjoining Defendant Todt from, directly or indirectly, including, but not limited to, through any entity owned or controlled by Defendant Todt, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Defendant Todt from purchasing or selling securities listed on a national securities exchange for his own personal account.

### III.

Order Defendants to pay civil penalties under Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

### IV.

Enter an Order, pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C.

§ 78u(d)(2), permanently prohibiting Defendant Todt from serving as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

## V.

Entering an Order, pursuant to Section 21(d)(6)(A) of the Exchange Act, 15 U.S.C. § 78u(d)(6)(A), prohibiting Defendant Todt from participating in an offering of penny stock.

## VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VII.

Grant such other and further relief as this Court may determine to be just and necessary.

## **JURY DEMAND**

The SEC demands a trial by jury on all claims so triable.

Dated:  June 11, 2021

*/s/ Donald W. Searles*
DONALD W. SEARLES
Attorney for Plaintiff
United States Securities and Exchange Commission