ALYSSA A. QUALLS (IL Bar No. 6292124)
Email: quallsa@sec.gov
ROBERT M. MOYE (IL Bar No. 6225688)
Email: moyer@sec.gov
175 West Jackson Blvd., Suite 1450
United States Securities and Exchange Commission
Chicago, Illinois 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

Attorneys for Plaintiff
United States Securities and Exchange Commission

LOCAL COUNSEL
Donald W. Searles (Cal. Bar No. 135705)
Email: searlesd@sec.gov
United States Securities and Exchange Commission
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>WELLNESS MATRIX GROUP, INC. and GEORGE TODT,<br><br>Defendants, | Case No. 8:21-cv-01031-SSS-DFM<br><br>**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A FINAL JUDGMENT INCLUDING INJUNCTIVE RELIEF AND A CIVIL MONETARY PENALTY AGAINST DEFENDANT GEORGE TODT**<br><br>Hearing Date: April 14, 202<br>Time:         2:00 p.m. PDT<br>Place:        Courtroom 10C<br>Judge:        Hon. Sunshine S. Sykes |

# TABLE OF CONTENTS

I.   Undisputed Facts Found by the Court ................................................................1

II.  Other Relevant, Undisputed Facts ......................................................................2

III. Argument ............................................................................................................4

    A.   Todt Should be Subject to a New Permanent Injunction ..........................4

    B.   Todt Should Be Subject to a Conduct Based Injunction ..........................5

    C.   Todt Should Be Subject to an Officer and Director Bar ..........................6

    D.   Todt Should Be Subject to a Penny Stock Bar .........................................7

    E.   Todt Should Be Required to Pay a Civil Monetary Penalty ....................8

IV.  Conclusion ........................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*SEC v. 800america.com, Inc.*, No. 02 Civ. 9046(HB),
    2006 WL 3422670 (S.D.N.Y. Nov. 28, 2006) ................................................... 6

*SEC v. Abellan*,
    674 F. Supp. 2d 1213 (W.D. Wash. 2009) ........................................................ 9

*SEC v. Coates*,
    137 F. Supp. 2d 41 (S.D.N.Y. 2001) ................................................................. 9

*SEC v. Fehn*,
    97 F.3d 1276 (9th Cir. 1996) ............................................................................. 4

*SEC v. mUrgent Corp.*, No. SACV 11-0626 DOC (SSx),
    2012 WL 630219 (C.D. Cal. Feb. 28, 2012) ..................................................... 8

*SEC v. Murphy*,
    50 F.4th 832 (9th Cir. 2022) .............................................................................. 8

*SEC v. Murphy*,
    626 F.2d 633 (9th Cir. 1980) ............................................................................. 8

*SEC v. Patel*,
    61 F.3d 137 (2d Cir. 1995) ................................................................................ 6

*SEC v. Wencke*,
    622 F.2d 1363 (9th Cir. 1980) ........................................................................... 5

*Steadman v. SEC*,
    603 F.2d 1126 (5th Cir. 1979) ........................................................................... 7

**Statutes**

Section 3(a)(51) of the Securities Exchange Act of 1934,
    15 U.S.C. § 78c(a)(51)(A) ................................................................................. 7

Section 10(b) of the Securities Exchange Act of 1934,
    15 U.S.C. § 78j(b) ......................................................................................... 2, 5

Section 21(d)(1) of the Securities Exchange Act of 1934,
    15 U.S.C. § 78u(d)(1) ........................................................................................ 3

Section 21(d)(2) of the Securities Exchange Act of 1934,
   15 U.S.C. § 78u(d)(2) ..................................................................................5

Section 21(d)(3)(B)(iii) under the Securities Exchange Act of 1934,
   15 U.S.C. § 78u(d)(3)(B)(iii) ......................................................................8

Section 21(d)(5) of the Securiteis Exchange Act of 1934,
   15 U.S.C. § 78u(d)(5) ..................................................................................5

Section 21(d)(6)(A) of the Securities Exchange Act of 1934,
   15 U.S.C. § 78u(d)(6)(A) ............................................................................7

**Rules**

17 C.F.R. § 201.1001 .........................................................................................8

17 C.F.R. Part 201 Table I to Subpart E ............................................................8

17 C.F.R. § 240.10b-5,
   Rule 10b-5 under the Securities Exchange Act of 1934..............................4

17 C.F.R. § 240.3a51-1,
   Rule 3a51-1 under the Securities Exchange Act of 1934............................7

17 C.F.R. § 242.600(b)(48).................................................................................7

Plaintiff United States Securities and Exchange Commission ("SEC") filed this action on June 11, 2021, alleging that in February and March 2020, Defendants Wellness Matrix and George Todt made materially false and misleading statements regarding COVID-19 at-home test kits and disinfectants to Wellness Matrix investors and potential investors. (*See* Dkt. No. 1.) After the close of discovery, the SEC moved for summary judgment against Todt. (Dkt. Nos. 43, 44.) On October 21, 2022 the Court entered an Order granting the SEC's Motion for Summary Judgment against Defendant George Todt (Dkt. No. 54.) The SEC now moves the Court to for a final judgment imposing injunctive relief and a civil monetary penalty against Todt.

I.  **Undisputed Facts Found By the Court.**

In its Order granting Summary Judgment, the Court found that all of the following facts were undisputed, and served as the basis for its judgment:

1.  Todt marketed COVID-19 test kits and Disinfectant for sale to consumers when Wellness Matrix did not have product to deliver to consumers. (Dkt. No. 54, Order at 6.)

2.  Todt represented that CoronaCide test kits were FDA approved or registered and authorized for at-home use when they were not. (*Id.*)

3.  Todt represented that the Disinfectant was EPA approved or registered when it was not. (*Id.*)

4.  Todt referenced Reg #HQ-OPP-2013-0220-0008 for Disinfectant when it was not a valid EPA registration number. (*Id.*)

5.  Todt promoted Wellness Matrix CoronaCide test kits on his personal Twitter account, falsely claiming that Wellness Matrix was selling "Fda approved" "[h]ome test kits" to "Stop Corona Before It Starts." (*Id.*)

6.  Todt told Robin Vyas, a potential investor, that Wellness Matrix had an EPA-approved Disinfectant that could stop the spread of COVID-19. (*Id.*)

7. Todt told Vyas that the price of Wellness Matrix's stock could increase from $0.05 per share to $20 per share as a result of the EPA-approved Disinfectant. (*Id*.)

8. Todt told Vyas that Wellness Matrix had sold 10,000 units of COVID-19 disinfectant to Costco. (*Id*.)

9. Todt acted with *scienter*, in that he knowingly and recklessly made material misrepresentations regarding Wellness Matrix's ability to deliver product and purported FDA and EPA approval. (*Id*. at 7.)

10. Moreover, Todt admitted that he promoted the test kits and disinfectant to benefit another Wellness Matrix investor who had incurred losses from a lawsuit against this investor and Todt. (*Id*.)

11. Todt acted with intent to deceive, manipulate or defraud. (*Id*.)

12. Todt's conduct was in connection with the purchase or sale of a security and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange. (*Id*.)

The Court found that, by the foregoing conduct, Todt had directly or indirectly violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. (*Id*.)

## II. Other Relevant, Undisputed Facts

There is additional, undisputed evidence which is relevant to the issue of remedies. More specifically:

13. In 2005, the Commission sued Todt for violating the federal securities laws in connection with an alleged pump and dump scheme. (Dkt. No. 43-2, SUF ¶ 2)

14. On November 18, 2005 obtained a final judgment in *SEC v. George A. Todt*, No. 05-3697 PA that permanently enjoined Todt from violating Section 10(b) of the Exchange Act, permanently barred him from participating in any offering of a penny stock and required him to pay approximately $1.3 million in disgorgement,

prejudgment interest, and civil penalties. (Dkt. No. 43-2, ¶ 3; Declaration of Alyssa Qualls ("Qualls Decl.") ¶ 17.)

15. Todt never paid anything towards this judgment. (*Id.*, ¶ 18.)

16. Todt owns 82.75 percent of the common shares of WMGR through a nominee entity, Chanzong Huayuan LLC. (Dkt. No. 43-2, ¶ 8.)

17. In 2020, Wellness Matrix common stock was trading on the OTC Pink Market under the ticker symbol WMGR. (*Id.* ¶ 7.)

18. Between 2019 and 2021, the CEO of Wellness Matrix allowed Todt to run the day-to-day affairs of the company, and to name members of the company's board of directors. (*Id.* ¶¶ 13-14.)

19. Todt told Robin Vyas that the United States and Chinese governments and Amazon had expressed interest in the Wellness Matrix Disinfectant. (*Id.* ¶ 29.)

20. Between March 6, 2020 and March 24, 2020, Robin Vyas purchased over 23,000 shares of Wellness Matrix common stock. (*Id.* ¶ 56.)

21. Vyas also told his sister about what he had learned about Wellness Matrix, and she purchased 5,000 shares of Wellness Matrix stock on March 26, 2020. (*Id.* ¶ 57.)

22. Vyas and his sister both subsequently sold their shares of Wellness Matrix and realized a loss. (*Id.* ¶¶ 59-60.)

23. Recently, the State of California sued Todt for conduct similar to that alleged in the SEC's case and, on May 3, 2021, obtained a judgment against Todt, including a permanent injunction and an order to pay $82,412.72 in restitution, and $2 million in civil penalties. (Qualls Decl., ¶ 15)

24. The SEC is informed that Todt has not paid anything towards this judgment. (*Id.* ¶ 16)

## III. Argument

### A. Todt Should be Subject to a New Permanent Injunction.

Section 21(d)(1) of the Exchange Act allows the SEC to seek injunctive relief against anyone who is engaged or is about to engage in conduct which violates the Exchange Act or the rules thereunder. A permanent injunction is appropriate whenever a violation of the federal securities laws has occurred and there is a reasonable likelihood of future violations. *SEC v. Fehn*, 97 F.3d 1276, 1295 (9th Cir. 1996). In assessing the likelihood of future violations, courts should consider all of the circumstances surrounding the defendant and his violations, including: (1) the degree of *scienter* involved; (2) the isolated or recurrent nature of the violation; (3) any recognition by the defendant of the wrongful nature of his conduct; (4) the likelihood, because of defendant's occupation, that future violations might occur; and (5) the sincerity of any assurances against future violations. *Id.* at 1295-96.

A permanent injunction requiring Todt to avoid violating the securities laws is appropriate here because the Court found that he violated the Exchange Act, and there is a reasonable likelihood future violations. First, Todt acted with a high degree of *scienter* to defraud potential purchasers, and investors, in the midst of the COVID-19 pandemic. Second, his false and misleading tweets were repeated on multiple occasions, and he had more than one conversation with Vyas to encourage him to invest in Wellness Matrix. Third, Todt has not shown any recognition of the wrongful, deceptive and harmful nature of his own conduct. Finally, because Todt is Wellness Matrix's largest shareholder, he will continue to have opportunities to use the corporate entity for his own benefit, in ways unrelated to COVID-19, and he has not provided any assurances against future violations.

Although Todt is already subject to a permanent injunction to obey the securities laws from the pump and dump case in 2005, and a more recent consumer fraud injunction issued by a California state court, the SEC contends that a permanent

injunction requiring Todt to obey the securities laws to should be imposed in this case because of the seriousness of the deceptive conduct found on summary judgment. In addition, a new injunction will be more effective in warning others against cooperating with Todt in another, different securities scheme, and would be easier to enforce through a contempt order if needed.

### B. Todt Should Be Subject to a Conduct Based Injunction.

In addition, Section 21(d)(5) of the Exchange Act provides federal courts with the authority to grant any other equitable relief that may be appropriate or necessary for the benefit of investors in any action brought by the SEC under any provision of the securities laws. Accordingly, this court has the authority to fashion specific injunctive relief under its broad equitable and ancillary powers. *SEC v. Wenke*, 622 F.2d 1363, 1369 (9th Cir. 1980). Pursuant to that equitable authority, the SEC respectfully requests that the Court issue a conduct-based injunction that would:

> permanently enjoin Todt from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Todt from purchasing or selling securities listed on a national securities exchange for his own personal account.

The SEC contends that this conduct-based injunction is necessary in addition to the broader permanent injunction discussed above because Todt is a recidivist who violated the permanent injunction and penny stock bar previously ordered in the 2005 injunction. The conduct-based injunction proposed by the SEC would expressly prohibit Todt from engaging in *any* new securities-related schemes, and would provide an additional layer of protection – in advance – to investors from the risk that Todt would engage in new schemes involving the issuance, offer, sale or purchase of securities.

### C. Todt Should Be Subject to an Officer and Director Bar.

Section 21(d)(2) of the Exchange Act also authorizes a court in an injunctive action to prohibit a person who has violated Exchange Act Section 10(b) from acting as an officer or director of a public company, if that person's conduct demonstrates unfitness to serve as an officer or director. The factors that courts consider when determining whether to bar a defendant from serving as an officer or director of a public company include: (1) the egregiousness of the violation; (2) whether the defendant is a repeat offender; (3) the defendant's position when he engaged in the fraud; (4) the degree of *scienter*; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur. *See, e.g., SEC v. Patel*, 61 F.3d 137, 140-41 (2d Cir. 1995).

Imposing an officer and director bar in this case against Todt is appropriate for all of the reasons discussed above with regard to an order of injunctive relief. His conduct was egregious, and he is a repeat offender. He was acting as a controlling shareholder of WMGR when he engaged in the fraudulent COVID-10 scheme, and he acted with *scienter*. Finally, Todt clearly acted to benefit himself and another WMGR shareholder, and because he remains a controlling shareholder of WMGR it is likely that his misconduct will recur.

Even though at the time of his violations Todt was not actually an officer or director of WMGR, it does not preclude the Court from imposing this type of relief. Courts have imposed an officer and director bar where the defendant was not formally an officer or director of a company at the time of the fraud, because he was in a controlling or fiduciary role with respect to the company. *See, e.g., SEC v. 800america.com, Inc.*, No. 02 Civ. 9046(HB), 2006 WL 3422670, at *13 (S.D.N.Y. Nov. 28, 2006) (officer and director bar was appropriate because she held herself out as a company officer and exhibited control over the company's finances).

Here, Todt controlled the day-to-day affairs of WMGR and selected the

company's board members when the violations occurred. Finally, imposing an officer and director bar against Todt will prevent him from leveraging his controlling interest in WMGR into a position as a company officer or director.

### D. Todt Should Be Subject to a Penny Stock Bar.

Section 21(d)(6)(A) of the Exchange Act further authorizes a federal court to impose a penny stock bar in any enforcement action alleging violations of the Exchange Act "against any person participating in, or, at the time of the alleged misconduct who was participating in, an offering of penny stock." When deciding whether to impose a penny stock bar, federal courts generally consider the factors first outlined in *Steadman v. SEC*, 603 F.2d 1126, 1140 (5th Cir. 1979). Those factors include: (1) egregiousness of the defendant's actions; (2) the isolated or recurrent nature of the infraction; (3) the degree of *scienter* involved; (4) the sincerity of the defendant's assurances against future violations; (5) the defendant's recognition of the wrongful nature of his conduct; and (6) the likelihood that the defendant's occupation will present opportunities for future violations. (*Id.*)

A penny stock bar against Todt is appropriate here. First, all of the fraudulent conduct in this case involved a penny stock. The securities of WMGR did not meet any of the exceptions from the definition of a "penny stock" set forth in Exchange Act Section 3(a)(51) and Rule 3a51-1 thereunder. Among other things, the securities were equity securities: (1) that were not registered on a national securities exchange or listed on an automated quotation system sponsored by a registered national securities association; (2) that were not "NMS stock," as defined in 17 CFR § 242.600(b)(48); (3) that traded below five dollars per share during the relevant period; (4) whose issuer had net tangible assets and average revenue below the thresholds of Rule 3a51-1(g)(1) and (2); and (5) that did not meet any of the other exceptions from the definition of "penny stock" contained in Rule 3a51-1 under the Exchange Act.

Second, Todt's conduct was egregious, and was repeated several times during the period at issue. Todt's conduct involved *scienter*, and he has not acknowledged the wrongfulness of his conduct or given any assurances – let alone since assurances – against future violations. Finally, Todt's prior securities laws violations, and his controlling interest in WMGR, suggest that it is very likely that the will have opportunities for future securities laws violations unless appropriately restrained.

E.   **Todt Should Be Required to Pay a Civil Monetary Penalty.**

Finally, the SEC requests that the Court order Todt to pay a civil monetary penalty of $446,458. The amount sought is a two-time, "third tier" statutory penalty, in that the violation "involved fraud, deceit, [or] manipulation . . . and [] such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons."[1] Section 21(d)(3)(B)(iii) of the Exchange Act, 15 U.S.C. § 78u(d)(3)(B)(iii). The SEC requests a two-time penalty here because Todt's fraudulent conduct included falsely marketing two different products: COVID-19 disinfectant and home test kits.

The amount of any civil monetary penalty is within the discretion of this Court. *See SEC v. Murphy*, 50 F.4th 832, 847 (9th Cir. 2022). Several factors are relevant to this determination, including: (1) the degree of *scienter* involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of the defendant's professional occupation, that future violations might occur; and (5) the sincerity of his assurances against future violations. *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). *See also SEC v. mUrgent Corp.*, No. SACV 11-0626 DOC (SSx), 2012 WL 630219, at *2

---

[1] For violations occurring after November 3, 2015 (adjusted for inflation as of January 15, 2022), the maximum third tier statutory penalty for an individual is $223,229 or the gross amount of pecuniary gain to the defendant as a result of the violation, whichever is greater. 17 C.F.R. § 201.1001 and 17 C.F.R. Part 201 Table I to Subpart E.

(C.D. Cal. Feb. 28, 2012).

A substantial civil penalty against Todt is appropriate because his conduct involved fraud and deceit that created a significant risk of substantial losses to other persons. Todt's false statements about the COVID-19 test kits and disinfectant induced investors (Vyas and his sister) to purchase WMGR stock. Todt's efforts to publicize and promote the sale of the kits and disinfectant are the most likely reason why WMGR's share price rose in the period at issue. Once the false news was exposed, the share price plummeted and created a significant risk of substantial losses to WMGR investors, including the Vyases. Todt's violations were serious and demonstrated a high degree of *scienter*. The Court found that Todt knowingly and recklessly made misrepresentations regarding WMGR's ability to deliver product and purported FDA and EPA approval, and that those misrepresentations were material. (Dkt. No. 54 at 7.) Moreover, throughout this litigation Todt has refused to accept the wrongful nature of his conduct or provide any assurances against future violations. Third-tier penalties have been imposed in similar cases involving violations of Section 10(b). *See, e.g.*, *SEC v. Abellan*, 674 F. Supp. 2d 1213, 1221-22 (W.D. Wash. 2009) (awarding the maximum third-tier civil penalty for each of the defendant's four statutory violations); *SEC v. Coates*, 137 F. Supp. 2d 413, 428–30 (S.D.N.Y. 2001) (imposing civil penalty for each of four different misrepresentations made by defendant in furtherance of fraud).

The SEC acknowledges that Todt is a recidivist securities law violator, and apparently he was not deterred from violating the securities laws again after the first judgment against him. He also was recently ordered to pay a civil penalty in by a California court for engaging in consumer fraud. However, imposing a significant civil penalty in this action is likely to help deter him and others in the securities industry from committing similar violations in the future. Todt should not receive any reward or benefit in this case from the fact that he has not paid the SEC's first

judgment against him, or that a California court recently imposed a similar remedy. The Court has more than sufficient grounds to impose a two-time, statutory third-tier penalty against Todt.

### III. Conclusion

For all of the foregoing reasons, the SEC respectfully requests that the Court enter an order subjecting Defendant George Todt to: (1) a permanent injunction to avoid violating the securities laws; (2) a conduct based injunction to avoid any activity involving the issuance, offer, sale or purchase of securities by others; (3) a bar against acting as an officer and director of a company with publicly-available securities; (4) a bar against participating in the offer or sale of penny stocks; and (5) a civil monetary penalty of $446,458. A proposed Order for the Court's consideration is submitted herewith.

Dated: March 17, 2023            Respectfully submitted,

                               */s/ Alyssa A. Qualls*
                               Alyssa A. Qualls
                               Attorney for Plaintiff
                               United States Securities and Exchange Commission

**PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action. My business address is:

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
175 W. Jackson Blvd, Suite 1450, Chicago IL 60604
Telephone No. (312)353-7390; Facsimile No. (312)353-7398.

On March 17, 2023, I caused to be served the document entitled **PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR INJUNCTIVE RELIEF AND A CIVIL MONETARY PENALTY AGAINST DEFENDANT GEORGE TODT** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Chicago, Illinois, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☒ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Chicago, Illinois.

☒ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: March 17, 2023              /s/ Alyssa A. Qualls

Case No. 8:21-cv-01031-SSS-DFM

*SEC v. Wellness Matrix Group, Inc., et al.*
United States District Court—Central District of California
Case No. 8:21-CV-01031-SSS-DFM

### SERVICE LIST

Wellness Matrix Group, Inc.
Barry Migliorini, CEO
18458 Santa Lenora Circle
Fountain Valley CA 92708
Email: bgminternational5@gmail.com


George A. Todt
13904 Fiji Way, Apt 237
Marina Del Ray, CA 90292
Email: gatodt@mac.com